E-FILED
Thursday, 11 August, 2022  04:28:32 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| JOSHUA B., <br>     Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>     Defendant. | Case No. 1:21-cv-01172-JES-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 22), the Defendant's Motion for Summary Affirmance (Doc. 24), and the Plaintiff's Reply (Doc. 25). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Joshua B. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on March 27, 2019, alleging disability beginning on April 21, 2017. His DIB and SSI claims were denied initially on August 29, 2019 and upon reconsideration on December 30, 2019. Joshua filed a request for hearing concerning his applications which was held on October 20, 2020 before the Honorable John P. Mills III (ALJ). At the hearing, Joshua was represented by an attorney, and Joshua and a vocational expert (VE) testified.

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 20) on the docket.

Following the hearing, Joshua's claims were denied on October 27, 2020. His request for review by the Appeals Council was denied on January 15, 2021, making the ALJ's Decision the final decision of the Commissioner. Joshua timely filed the instant civil action seeking review of the ALJ's Decision on February 3, 2021.

## II

Joshua argues the ALJ committed the following errors: 1) after determining that all of Joshua's physical impairments were non-severe, the ALJ improperly declined to account for any of Joshua's physical limitations in the RFC assessment; 2) throughout the Decision, the ALJ improperly undermined the effects of Joshua's severe mental impairments; and 3) the ALJ relied upon impermissible inferences to reject Joshua's subjective statements regarding his disabling symptoms.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled.

2

Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability.  *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.  The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).  The factual determination is made by using a five-step test.  *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.[2] In the following order, the ALJ must evaluate whether the claimant:

1)    is performing substantial gainful activity;

2)    suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)    suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)    is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)    is unable to perform any other work existing in significant numbers in the national economy.

---

[2] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Joshua claims error on the ALJ's part at Steps Two, Three, and Four.

**A**

At Step One, the ALJ determined Joshua had not engaged in substantial gainful activity since April 21, 2017, the alleged onset date. AR 139. At Step Two, the ALJ determined Joshua had the following severe impairments: Post Traumatic Stress Disorder (PTSD); Attention Deficit Hyperactivity Disorder (ADHD); anxiety; personality disorder; social phobia; intermittent explosive disorder; and dysthymia. *Id.* At Step Three, the ALJ determined Joshua did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 141. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to the performance of simple and routine tasks, and simple work related decisions. He is limited to occasional interaction with coworkers and supervisors, and can have no contact with the general public. He is limited to tolerating only occasional changes in a routine work setting.

AR 142. The ALJ determined Joshua was unable to perform any past relevant work which included work as a welder fabricator and automotive service station

mechanic.  AR 147.  Finally, at Step Five, the ALJ determined that, considering Joshua's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Joshua could perform.  AR 148. Thus, the ALJ concluded Joshua had not been under a disability from April 21, 2017 through the date of the Decision.  *Id.*

## B

Joshua first argues that the ALJ erred in disposing of Joshua's disabling physical impairments at Step Two such that the RFC assessment was insufficient. Specifically, Joshua says the ALJ perfunctorily dismissed any neuropathy or sciatic nerve-type symptoms and failed to even consider his medically determinable non-severe impairments of hiatal hernia, GERD, and hemorrhoids in assessing his RFC. The Commissioner disputes the ALJ made any such errors where the latter properly explained the record did not contain evidence establishing Irritable Bowel Syndrome (IBS), neuropathy, or sciatica were medically determinable physical impairments and where the ALJ addressed Joshua's remaining gastrointestinal complaints.

## 1

At Step Two, the ALJ explained that Joshua alleged disability

due to a plethora of physical complaints and/or impairments. However, the objective treatment records that he submitted either do not corroborate a diagnosis, or do not corroborate that the impairments cause more than minimal functional limitation.  The claimant alleges having neuropathy affecting both the upper and lower extremities.  However, the claimant has not presented a diagnosis, supported by medical findings, for any diagnosis of neuropathy or sciatica.

AR 139.  The ALJ proceeded to explain further that: 1) such an impairment may not be established solely on the basis of a claimant's allegations regarding symptoms; 2) there was no evidence from an "acceptable medical source"

establishing the existence of a medically determinable impairment; 3) Joshua's doctor noted his most recent EMG studies and MRIs were normal; 4) Joshua did not follow through with obtaining updated EMG studies for which he was referred in February 2018; and 5) Joshua's physical exams did not document his alleged severe difficulty with ambulating, walking, using his hands, or standing on heels and toes, and he had normal 5/5 motor strength in the upper and lower extremities, no atrophy, intact sensation, normal grip strength, and normal fine finger skills. As for Joshua's alleged diagnosis of IBS: 1) Joshua acknowledged he had not "got it down on paper" yet; 2) a CT taken of Joshua's abdomen showed no stranding to suggest significant inflammation, but no diagnosis of IBS was offered; and 3) a colonoscopy did not show evidence of IBS and showed Joshua's entire colon was normal other than one polyp. AR 140.

The ALJ carefully applied the relevant regulations and rulings. *See, e.g.*, 20 C.F.R. § 404.1521 ("a physical or mental impairment must be established by objective medical evidence from an acceptable medical source"); 20 C.F.R. § 404.1529(b) (stating a claimant's symptoms will not be found to affect his ability to do basic work activities unless medical signs or laboratory findings show a medically determinable impairment is present); SSR 16-3p at *2 ("Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"). Here, there was nothing perfunctory about the ALJ's assessment of Joshua's alleged neuropathy and sciatica where he listed several reasons for finding they were not medically determinable impairments. Joshua cites to merely his statements of symptoms, a medical record that merely provided the "clinical impression" of "bilateral elbow joint pain" and "left leg pain," and the consultative internal medicine examiner's note wherein the doctor merely provided the "impression"

of "sciatic nerve issues."  Joshua does not point to any objective medical evidence from an acceptable medical source.

In that regard, Joshua faults the ALJ for penalizing him for a delay in scheduling updated EMGs where he was scheduled for them the next month after the hearing (November 2020).  The argued impropriety of the ALJ's reasoning in this regard is totally unconvincing.  Joshua had *more than two years before* the hearing to schedule the updated EMG studies and managed to schedule them to occur two weeks *after* the hearing.[3]

As for the ALJ's consideration of Joshua's medically determinable impairment of a hiatal hernia, the ALJ rejected it was severe given the complete absence of any subsequent medical records showing complaints of or treatments for related symptoms after a CT indicated it in December 2019.  The ALJ also observed Joshua only mentioned at the hearing that his hernia required him to eat more slowly, a limitation that was not work related, and his treatment records similarly failed to corroborate any resulting work-related limitations.  As for his medically determinable impairment of GERD, the ALJ observed:  1) treatment records did not corroborate any resulting functional limitations; 2) they did not show objective symptoms from the condition that would affect Joshua's ability to work; 3) Joshua was not severely malnourished (in fact, he was obese); 4) he did not have any ER visits for malnutrition or had been recommended for surgery to treat his GERD; and 5) Joshua had not been referred to any specialist to treat his GERD.  As for Joshua's hemorrhoids, the ALJ relied upon the following to reject them as severe:  1) Joshua's intermittent treatment for them; 2) an October 2018 doctor follow up just after an ER visit for his hemorrhoids at which time examination confirmed prior external hemorrhoids and no internal hemorrhoids;

---

[3] Furthermore, as the Commissioner points out, Joshua's attorney at the hearing told the ALJ the record was complete, and Joshua's counsel did not proffer the results of the EMG to the Appeals Council.

7

1:21-cv-01172-JES-JEH     # 26     Filed: 08/11/22     Page 8 of 17

3) Joshua sought further treatment only after more than a year passed; 4) though Joshua reported mild to moderate bleeding symptoms, he inconsistently alleged limitations or pain with respect to sitting and his treatment records did not corroborate any limitation with respect to sitting; and 5) Joshua's treatment records did not show symptoms of hemorrhoids lasting at least 12 consecutive months.

The ALJ considered Joshua's medically determinable impairments in the same way he did Joshua's non-medically determinable impairments, with a careful application of the relevant regulations and rulings. *See, e.g.*, 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement"); 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"); SSR 16-3p at *11 ("At [Step Two], we will consider an individual's symptoms and functional limitations to determine whether his or her impairment(s) is severe unless the objective medical evidence alone establishes a severe medically determinable impairment or combination of impairments that meets our duration requirement").

**2**

Because the ALJ so clearly articulated his assessment of Joshua's non-medically and medically determinable impairments – severe and non-severe – at Step Two, the Court can easily trace the path of the ALJ's reasoning from his conclusions at Step Two to his RFC assessment which omitted any physical limitations. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Joshua is correct that an ALJ must consider both a

8

claimant's severe and non-severe impairments when assessing the RFC.  *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (stating that "an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation").  But here, the ALJ incorporated his assessment of Joshua's severe and non-severe impairments at Step Two into his RFC assessment where he noted "that most of the claimant's hearing was focused on physical complaints as being the reason he cannot work, but these are currently unsubstantiated, as discussed above."  AR 144.  The ALJ also did not remain entirely silent as to Joshua's physical impairments at Step Four.  In finding the State Agency doctors' assessments "persuasive," the ALJ stated:

> The state agency cited to objective medical findings to support their conclusions including the claimant's normal physical exam findings (Exhibit 4F), the lack of any objective testing corroborating many of his allegations such as neuropathy, as well as his extremely limited and sporadic treatment for his physical impairments. The claimant has not demonstrated a significant change in his physical conditions since these opinions were rendered and they remain consistent with the overall record.

AR 146.  In other words, the ALJ built a logical bridge from his Step Two analysis to his RFC analysis.  *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is not required to address in writing every piece of evidence or testimony presented but is required to provide an accurate and logical bridge between the evidence and his conclusions).  The ALJ did not more fully consider Joshua's physical impairments for purposes of the RFC because he had already provided a detailed explanation as to why those impairments did not present functional limitations that would need to be considered further at Step Four.  The Court may read the ALJ's Decision as a whole.  *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *see also Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (explaining that a reviewing court gives an ALJ's opinion a "commonsensical

reading rather than nitpicking at it" when analyzing it for fatal gaps or contradictions).

The foregoing does away with Joshua's argument that the ALJ erred in failing to consider not only the resulting physical deficits from his gastrointestinal complaints but also the mental and emotional impact of his symptoms at Step Four.  For example, it follows from the ALJ's finding at Step Two that the extent of Joshua's hemorrhoid symptoms were not corroborated to the ALJ's silence at Step Four as to how those symptoms interacted with Joshua's mental health.  To the extent Joshua relies upon his own statements and reports to others as to how his physical symptoms affected him mentally, that argument fares no better for the reasons set forth *infra*.

### 3

Lastly, the fact that the ALJ elicited testimony from the VE that the jobs he identified would still be available if the person were limited to sedentary work with frequent handling and fingering bilaterally does not indicate the ALJ had a preconceived notion that Joshua was not disabled.  Regularly, ALJs pose more restrictive hypotheticals to VEs at hearings that the ALJs do not ultimately adopt.  That indicates no more than an ALJ is attempting to fulfill the obligation to sufficiently develop the record and the obligation to elicit testimony sufficient to support the ALJ's findings with regard to the claimant's ability to do past relevant work or other work existing in significant numbers.

### C

Joshua next argues that the seeds of error with regard to his severe mental impairments were planted at Step Three where the ALJ relied largely on the same small cluster of basic life activities, found only moderate limitations in all four functional areas though Joshua's deficits were clearly greater in some areas than others, and essentially minimized the impact of the consultative psychological

10

examiner's report. The Commissioner counters that substantial evidence supports the ALJ's mental RFC assessment, and the ALJ provided a clear explanation of how he reached his RFC finding.

The thrust of Joshua's argument regarding the ALJ's findings as to the "paragraph B" criteria at Step Three is that the ALJ improperly weighed the record evidence. The Court cannot reweigh that evidence. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Moreover, the Court finds the ALJ provided ample explanation and cited to substantial evidence in support of his findings as to the four broad areas of functioning. True, the ALJ cited to some of the same evidence for each of the four functional areas including: Joshua's sole custody of and care for two of his children (ages four and 14), his ability to go to the grocery store independently, his ability to drive, and his ability to cook some meals. But the ALJ elaborated upon the additional evidence relevant to each area.

As for Joshua's moderate limitation in understanding, remembering, or applying information, the ALJ pointed out that none of his medical providers noted any difficulty following or understanding their directions, Joshua's mental status exams showed intact memory and adequate judgment and insight, he was able to provide background, work, and medical history to his examiners, and he was able to carry out multi-step tasks such as caring for his two children. As for Joshua's moderate limitation in interacting with others, the ALJ pointed out the record indicated Joshua was able to function in limited social situations, Joshua reported engaging in activities outside his home or with others, he had a girlfriend, his doctors consistently noted his behavior cooperative and appropriate, and there was no record of evictions, altercations, police involvement, or severe social isolation. In support of Joshua's moderate limitation in concentration, persistence, or pace, the ALJ pointed out Joshua could drive around town without getting lost, his mental status exams showed his attention was either fair or intact, and the

11

consultative examiner noted Joshua had an adequate attention span and that his overall mental status exam was in the normal range of functioning.  In support of Joshua's moderate limitation in adapting or managing himself, the ALJ explained medical records did not document more than moderate difficulty responding to demands, managing symptoms, adapting to changes, or making plans, Joshua's doctors did not note inappropriate or poor hygiene during office visits, and Joshua did not have any ER visits or hospitalizations for mental symptoms.

The ALJ very succinctly tethered his conclusions regarding the extent of functional limitation (moderate) to the evidence.  He did not, as Joshua argues, begin with an inadequate assessment of the "paragraph B" criteria.  Given the ALJ's articulation at each functional area, the Court can see how the ALJ reasoned the evidence he cited illustrated Joshua's moderate (rather than greater or lesser) limitation.

The ALJ's discussion of the evidence and the conclusions he reached in his assessment of Joshua's RFC at Step Four were likewise sufficiently articulated and supported.  In asserting that the ALJ did not provide a more detailed assessment of his "paragraph B" functional capabilities for purposes of the RFC, Joshua appears to ignore what the ALJ actually discussed at Step Four.  The ALJ addressed Joshua's severe mental impairments – their attendant symptoms as complained of by Joshua, their impact on Joshua's daily functioning, their need for treatment as determined by medical providers and as reflected in treatment notes, and their extent as opined to by State Agency doctors – *at length*.  At Step Four, the ALJ elaborated even further as to, among other things, the fact of Joshua's sole custody of two of his children and of Joshua's ability to engage in certain daily activities, and the ALJ juxtaposed those facts with the medical and other pertinent evidence of record.  For example, the ALJ considered that Joshua was "focused" and "attentive" with his four-year-old son as noted by a doctor which showed,

along with other evidence, that Joshua maintained "some form of concentration and persistence, to adapt to changes, and to understand instructions and procedures." AR 145. Though Joshua alleged trouble with reading and writing, the ALJ noted Joshua "did write a letter that was a page and a half he wanted to read at the hearing." *Id*. Simply put, the ALJ provided a detailed assessment of Joshua's moderate limitations in all four functional areas for purposes of the RFC.

Joshua asserts the ALJ's findings are undermined where the ALJ failed to take into account the consultative psychological examiner's statement that Joshua's ability to interact and converse was "markedly difficult" and her opinion that it would be difficult for him to obtain and maintain gainful employment. Joshua also argues the ALJ's findings are similarly undermined by Joshua's real-time demonstration at the hearing of his tendency to talk excessively, appear scattered, and exhibit flight of ideas. First, any argument as to Joshua's presentation at the hearing is unpersuasive. A reviewing court must "defer[] to the presiding ALJ, who has seen the hearing up close." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019); *see also Melinda W. v. Kijakazi*, No. 20-cv-50090, 2022 WL 2791516, at *4 (N.D. Ill. July 15, 2022) ("a reviewing court should rarely disturb a subjective symptom evaluation, because it lacks 'the opportunity to observe the claimant testifying'") (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). The ALJ, unlike the Court, had the benefit of both his observation of Joshua at the hearing as well as the record evidence to inform his conclusions as to Joshua's limitations in the "paragraph B" criteria and their impact for purposes of the RFC assessment.

Second, and significantly, the ALJ confronted the consultative psychological examiner's observations and statements in the Decision. Joshua finds it interesting that the ALJ was able to find the consultative examiner's report persuasive only to the extent he agreed with it. The ALJ's actual discussion of that report reveals

13

nothing suspect about his analysis of that report.  The ALJ explicitly noted Joshua's "general interaction with the consultative examiner was markedly difficulty [sic], and it would be difficulty [sic] for the claimant to obtain and maintain gainful employment at this time."  AR 146.  The consultative examiner's opinion regarding Joshua's mental status exam as falling within the normal range was persuasive because consistent with results of the examination conducted by the examiner that day and consistent with the overall record of mental status exams conducted by his treating doctors.  The examiner's statement as to marked difficulty with interaction and inability to obtain and maintain employment was not persuasive because:  broad; did not offer any specific work-related limitations but rather addressed the ultimate question of disability; and based the statement on a one-time examination of Joshua that was out of proportion to the longitudinal medical record.  The ALJ further identified the discrepancy between times when Joshua was noted to be scattered and to talk excessively, and the "many more times he is noted by providers to be cooperative and appropriate[.]"  *Id*.  The ALJ provided enough explanation and enough record support.  *See Biestek*, 139 S. Ct. at 1154 ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (stating that a reviewing court must affirm an ALJ's decision denying a plaintiff's claims "even if reasonable minds could differ concerning whether [the claimant] is disabled" if the decision is adequately supported).[4]  Of note, the ALJ highlighted that Joshua was noted by several providers to be excessively talkative, scattered, and with some flight of idea so the

---

[4] The Court does not find the Commissioner's attempted justification for the ALJ's mental RFC is premised upon an overly deferential definition of the substantial evidence standard, as Joshua argues. The Commissioner's justification is premised upon a correct definition of the substantial evidence standard, and the Court's independent application of the substantial evidence standard to this case reveals the ALJ's Decision satisfies that standard.

ALJ limited Joshua to work that did not require any contact with the general public to account for those findings.

### D

Joshua lastly argues that the ALJ committed several errors in rejecting Joshua's subjective statements regarding his disabling symptoms. Joshua contends the ALJ dug up reasons to undermine his limitations, simply rejected Joshua's claims because he believed Joshua untruthful, and cherry-picked the record. The Commissioner argues the ALJ's assessment of Joshua's subjective assertions was well supported and sufficient to provide a fair sense of how he viewed Joshua's statements. The Commissioner further argues that the ALJ properly considered the particular factors with which Joshua takes issue. The Court agrees with the Commissioner, and its finding in this regard further reveals that the ALJ did not commit the errors Joshua claims he committed at Step Two.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p at *7-8.

The ALJ indeed addressed Joshua's daily activities (raising two children, grocery shopping, cooking), his presentation to a mental health professional on a regular basis, his report of symptoms at times when psychosocial stressors occurred (girlfriend's drug abuse, issues with teen daughter and his "ex," work issues), his use of medication for his mental impairments, and his treatment

1:21-cv-01172-JES-JEH    # 26    Filed: 08/11/22    Page 16 of 17

records. The ALJ pointed to a lack of psychiatric hospitalizations or ER visits since the alleged onset date as support for his observation that Joshua's description of his symptoms and limitations was not supported by the clinical evidence. The absence of such visits was ripe for consideration per SSR 16-3p, was just one factor among many the ALJ gave for finding Joshua's subjective symptoms were not as limiting as he alleged, and did not singularly lead the ALJ to determine Joshua was able to sustain full-time work.

The ALJ cited several records in which Joshua reported his medications improved and/or controlled his mental health symptoms, records in which Joshua's medications were adjusted to provide him better relief, and records in which there were ongoing notations that Joshua's medication regimen was generally working well for him. The ALJ additionally reasoned that Joshua's significant gap in treatment, failure to attend counseling, and stopping medications against medical advice were inconsistent with the severity of his alleged symptoms. Again, Joshua's medications, their efficacy, and his compliance with treatment were ripe for consideration, further informed the ALJ's overall finding as to Joshua's limitations due to his mental impairments, and did not alone prompt the ALJ to conclude he was capable of sustaining full-time employment. The ALJ also did not make any faulty leaps in logic in terms of medication non-compliance. Addressing the issue directly, the ALJ explained that he considered that mental illness may itself prevent a person from submitting to treatment or taking prescribed medication, cautioned that was not invariably the case, and then cited to Joshua's ability to self-administer his medication without supervision, to treatment notes that showed Joshua had good judgment, and to notes that his doctors expected he could follow treatment. Joshua obviously disagrees with the way the ALJ reconciled the entirety of the record evidence, but the Court does not see where the ALJ cherry-picked, ignored the longitudinal

evidence, or otherwise misapplied the relevant authority. *See Butera*, 173 F.3d at 1055 (providing that a reviewing court "may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled"). The ALJ's subjective symptom evaluation was certainly not "patently wrong." *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (reiterating that the Seventh Circuit court of appeals "will uphold an ALJ's credibility determination unless that determination is patently wrong'"); *and Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (explaining "patently wrong" means "the decision lacks any explanation or support").

## IV

For the reasons set forth above, it is recommended that:  1) the Plaintiff's Motion for Summary Judgment (Doc. 22) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 24) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Joshua B., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on August 11, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

17